Denio, Ch. J.
The supreme court, in this case, awarded a peremptory mandamus, requiring the auditor to draw his *535 -warrant on the treasurer in favor of John Buckley, the relator, for the payment of $224.04, claimed to be due him from the state for his services as assistant collector of canal tolls at Bochester, for about six and a half months from July 1st, 1859, at the rate of thirty-five dollars per month. It appeared that Buckley was appointed such assistant collector, at the rate of compensation mentioned, by the canal board, on the 9th day of June in that year, his appointment to take effect from the first day of that month; and that he served in that situation until the close of navigation, on the 17th day of December of the same year. The return of the auditor to the alternative writ denied the right of the board to appoint assistant collectors, and that was the only question in the case.
The revised statutes affirmed the existence of the canal board, which was created by prior statutes, with the powers and duties enumerated in that title of the revised statutes, and provided that the board should have power to appoint so many collectors of tolls on the canals as they might deem necessary, with power to fill vacancies, make removals, and determine the compensation of those officers. They were also authorized and directed to prescribe such rules and regulations respecting the collection of tolls, and to impose such forfeitures for the breach thereof, as they should judge reasonable. (1 B. S. 229, §§ 68 to 70.) On the 19th of April, 1859, an act was passed relating to the duties of the canal board and to certain canal officers, by ,the third section of which “the'office of assistant collector, or assistants to collectors of canal tolls pn the canals,” was abolished. (Laws of 1859, p. 1132.) A subsequent section of the same act declares that no clerk shall be employed by any collector of tolls, except when the auditor of the canal department shall certify the same to be necessary to enable such collector to perform the duties of his office. (§ 5.) By the last section of the act, it is declared that it shall take effect immediately, except as to the above- *536 mentioned third section, and another section not material to the present question; which sections, it was declared, should take effect on the first day of Janiiary, 1860. It is inferable from these provisos of this act of 1859, that prior to its enactment the canal board had been in the practice of appointing officers whom they called assistant collectors, or assistants to collectors of tolls, and that such appointees had actually been in the performance of such duties as were indicated by the title of their offices* It was the intention of the legislature prospectively to abolish that class of official agents; but, at the same time, to allow the practice of appointing them to continue during the then ensuing season of navigation. The intention of the legislature, not to disturb the existing practice during the canal season of 1859, was just as strong as was that of putting an end to it after that season should have passed. If we look only at the legislative intention) the enactment is equivalent to a mandate that the system of appointment of assistant collectors should continue until January, 1860, and that after that time it should cease. If it were conceded that, under the provisions of the revised statutes to which reference haá been made, only one collector could be appointed for a single port, but by a wrong construction on the part of the board a practice had grown up of appointing an assistant to the principal collector, it would unquestionably be competent for the legislature to confirm that practice either permanently or for a limited time, and it could be done so as to cover the past as well as the future. The question of power, as well as of construction, is different from what it would be if individual rights or interests were adversely affected. In the statutes respecting the revenues and expenses of the canals, the legislature must be considered as dealing with a subject of which the state is the proprietor. Its rights or interests may be modified or compromised as the legislature may consider expedient, where there is no constitutional impediment, and there is no person who can *537 question the effect of such legislation. I am, therefore, of opinion that the supreme court was right in holding, as it did, that the legislature, by the act referred to, must be considered as affirming and continuing for a limited time the practice which had prevailed of appointing assistant collectors. But I do not feel sure that the original authority was not sufficiently comprehensive to warrant the appointment of such officers. The number of collectors which the board were authorized to appoint was, in terms, unlimited. When the original provision was made, which was affirmed and continued by the revised statutes, the canal system was, to a certain extent, experimental, and hence large powers were committed to the board entrusted with the regulation of tne subject. (Laws of 1826, p. 360, § 5.) It was not well ascertained, we may suppose, how numerous or near to each other the collectors’ offices might be, nor how many of these officers might be required. Hence the subject was entrusted to the discretion of a board composed of high officers of the states It might be that at particular points more than one official, having the general power of a collector, would be necessary. But if more than one was required to perform the duties, it was plainly proper that there should be some subordination of rank and official power among them, so that there should .be an official head of the office. Stich provisions are quite usual in many of the arrangements of public administration. They are generally established and regulated by particular provisions of law, and thus have the direct sanction of the legislature. But in the present case the comprehensive provision in the revised statutes seems, by its broad language, to commit such details to the canal board. But if this were doubtful, the act of 1859 might be made use of to aid in the construction of the original act. When a legislative provision assumes a pre-existing state of the law, it is some evidence that the construction of the prior statute is such as it is thus assumed to be.
*538 Under the power conferred upon the auditor by the act of 1859, to limit the number of clerks which a collector might employ, he had limited the number to be appointed at the Rochester office to three. The relator, prior to his appointment as assistant collector, had been a fourth clerk in that office. That situation, assuming that there w;ere three clerks previously appointed, could not be any longer held by him, and he thenceforth ceased to be in the em ployment of the state. If I am right in supposing that the power to appoint assistant collectors existed, he was qualified to receive that appointment.
It appears that die neglected to file an oath of office as required by law. It was a misdemeanor in him to serve without qualifying himself in that respect, but we are no1 referred to any statute or authority by which such omission is madé to involve a forfeiture of compensation. I am ir favor of affirming the judgment of the supreme court.
Hogeboom, J.
I think the judgment of the supreme court should be affirmed.
1. The canal board had power to appoint as many collectors of tolls as they might deem necessary. (1 R. S. 5th ed. 602, § 135.) This appointment is an exercise of that power. , The incumbent was a collector of tolls on the canal. He discharged the duties of collector. There is nothing to show that his functions were in any wise different from those of collector. He is no less a collector because he is called assistant collector. He is, as any other collector at that point would be, an aid or assistant to the first collector. He helps him to collect tolls. He relieves) him of a portion of the burthens of the office. He is, in effect, a second or additional collector, at the same station. If he had been called such, I think no one would have questioned the validity of the appointment, or the right to compensation for services rendered strictly in that capacity.
*539 2. I think, also, that by the fair construction of sections three and twelve of chapter 495 of the Laws of 1859, the relator is entitled to compensation. These sections abolish the office of assistant collector, but provide that the abolition shall not take effect till January 1, 1860. During the intermediate time, therefore, the office is continued, and its existence recognized. ' During that time, and between the passage of the act and the time of its taking effect, these services were rendered. They may be said' to have been rendered upon the faith of the legislative pledge therein contained. It may be that the abolition of an office which does not exist does not create it or infuse into it vitality for the past. But the office, whether rightfully created or not, did exist in point of fact, and an incumbent was in the discharge of its duties. This was doubtless known at the time of the passage of the act, as well as the fact that the power of the canal board to make the appointment, though exercised, had been questioned. These doubts were intended to be resolved by this act. It must, I think, have been intended at least that compensation should be made for services actually performed in good faith, and of which the state was receiving the benefit, under an .actual appointment to an office supposed to exist, and whose existence was recognized by the state officials having charge of the canals.
All the judges concurring, judgment affirmed.